| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION |
|---|---|

CARLOS GOODEN, Ph.D.

    *Plaintiff(s)*,

v.

THE UNIVERSITY OF HOUSTON SYSTEM AND THE UNIVERSITY OF HOUSTON-DOWNTOWN,

    *Defendant(s)*.

§
§
§
§
§
§
§
§
§
§
§

No. _____

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Carlos Gooden, Ph.D. ("Plaintiff" or "Dr. Gooden"), files his Original Complaint against Defendants, The University of Houston System ("UHS") and University of Houston-Downtown ("UHD") (collectively referred to as "Defendants" or "UofH"), showing the Court as follows:

1. Dr. Gooden is a gay African American male. During his employment, his direct supervisor, Dean Charles Gengler, subjected him to race and sex, including sexual orientation, discrimination as well as subjected him to a hostile work environment.

2. As a result, Dr. Gooden brings this action under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. §§ 2000e-2000e-17, ("Title VII") and the Texas Commission on Human Rights Act, Tex. Lab. Code ch. 21 ("TCHRA").

I. THE PARTIES & JURISDICTION

3. The Plaintiff, Carlos Gooden, Ph.D., is a natural person residing in Houston, Texas.

4. Defendant, The University of Houston System, is a public university system and an employer engaging in an industry affecting interstate commerce which regularly employs more than fifteen employees. UHS can be served with summons through its Chancellor, Dr. Renu Khator, at the Office of the Chancellor, University of Houston System, 212 Ezekiel Cullen Building, Houston, Texas 77204; or wherever she may be found.

5. Defendant, University of Houston-Downtown, is a public university and an employer engaging in an industry affecting interstate commerce which regularly employs more than fifteen employees. UHD can be served with summons through its President, Dr. Loren Blanchard, at the Office of the President, University of Houston at One Main Building, Suite S990, Houston ,Texas 77002; or wherever he may be found.

6. This Court has jurisdiction pursuant to 28 U.S.C. §1331 and §1343, and 42 U.S.C. §2000e-5(f)(3), because Plaintiff's causes of action arise under the following federal statutes: Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et. seq.* and 42 U.S.C. §1981.

7. Venue is proper in the Houston Division of the United States District Court for the Southern District pursuant to 28 U.S.C. 2000e-5(f)(3) because Defendants reside in the Southern District of Texas, the unlawful employment practices were committed in the

Southern District of Texas, and a substantial part of the events giving rise to the Plaintiff's claims occurred in Houston, Texas.

## II. FACTUAL BACKGROUND

8. Plaintiff Dr. Carlos Gooden is a gay African American male.

9. In September 2021, UofH hired Dr. Gooden as the Executive Director of Graduate Programs where he oversaw admissions and recruiting for students seeking a graduate degree, specifically within the Marilyn Davies College of Business.

10. He reported directly to Dean Charles Gengler, a white heterosexual male.

11. During his employment with UofH, Dean Gengler had a documented history of engaging in discriminatory behavior, including but not limited to, racist and homophobic remarks, jokes, and gestures.

12. Almost immediately after Dr. Gooden was hired, he began being subjected to Dean Charles Gengler's racially discriminatory and homophobic behavior.

13. Dean Gengler's discriminatory behavior toward Dr. Gooden became an almost daily occurrence.

14. In the midst of Dean Gengler's barrage of discriminatory behavior toward Dr. Gooden, he learned that Dean Gengler had a long documented history of engaging in discriminatory behavior.

15. In fact, prior to Dr. Gooden's employment with UofH, prior UofH employees had made complaints about Dean Gengler's discriminatory behavior.

16. And UofH's failure to properly address and rectify Dean Gengler's discriminatory behavior, in turn perpetuated and emboldened his discriminatory actions towards Dr. Gooden.

17. For example, shortly after Dr. Gooden was hired, in or around October of 2021, he informed Dean Gengler that he had the opportunity to meet UHD's President, Loren Blanchard, a male African American, and Dean Gengler responded, "Nice, it will probably make me look good that I hire Blacks!"

18. Around the same time, it is also documented that Dean Gengler told other employees regarding Dr. Gooden's hiring, "Now they can't say I'm racist."

19. Dean Gengler also commented to other employees insinuating that he hired Dr. Gooden, because of race and sexual orientation, to make himself look good and used the race of his hire to deflect accusations of discrimination.

20. On another occasion, Dean Gengler, in the presence of Dr. Gooden and other staff members, suggested that a black staff member put on a monkey suit.

21. When Dean Gengler was confronted about the racially discriminatory comment, he disingenuously insisted he meant something other than the historically racist connotation comparing Black Americans to monkeys.

22. On April 19, 2022, UHD Police alerted the campus that an assault had been committed by a tall black man.

23. At or around the same time, Dr. Gooden had stepped out of his office.

24. Immediately following the police alert, Dean Gengler expressed to the Marilyn Davies College of Business' faculty and staff that Dr. Gooden was the individual who committed the assault since he was out of the office when the incident occurred, and because he "fit the description" of the suspect, i.e. tall, black and male.

25. When Dr. Gooden returned to the office, he was met with a room full of laughter—which immediately caused embarrassment and humiliation.

26. It was apparent that Dean Gengler's comment was intended to be racially derogatory.

27. In addition to the racially discriminatory behavior, Dean Gengler also frequently discriminated against Dr. Gooden based upon his sexual orientation, gay.

28. Dean Gengler often made homophobic remarks, in the presence of Dr. Gooden and others.

29. For example, on or around November 5, 2021, Dr. Gooden was hosting a prospective student when Dean Gengler blurted out an inappropriate joke specifically targeting Dr. Gooden's sexual orientation.

30. Dean Gengler interrupted Dr. Gooden's meeting with the prospective student to joke: "What do you call two men on a date? […] a man-date".

31. Dean Gengler frequently used inappropriate jokes about homosexuality to target Dr. Gooden's sexual orientation as well as the sexual orientation of other male staff.

32. These are just a few examples of the almost daily discriminatory behavior exhibited by Dean Gengler.

33. Initially, Dr. Gooden was hesitant to report Dean Gengler's behavior given the apparent school-wide acceptance of his overt and constant discriminatory behavior.

34. However, the continuous and constant discriminatory actions, including the racist remarks, jokes, innuendoes, and slants taken together created a hostile work environment within the Marilyn Davies College of Business.

35. On or about April 25, 2022, Dr. Gooden could no longer bear the harassment and filed a formal complaint of discrimination.

36. Despite UofH being on notice of Dean Gengler's discriminatory behavior well before Dr. Gooden was hired, UofH undertook a prolonged investigation into Dr. Gooden's complaints as well as other documented complaints by additional victims of Dean Gengler's discriminatory behavior.

37. UofH's prolonged investigation took more than one year to complete, which exceeded the time limitations in UofH's documented policy.

38. And the investigation substantiated at least *thirteen* acts of discrimination described in Dr. Gooden's complaints as well as other victims' complaints.

39. As a result of UofH's unlawful conduct, Dr. Gooden has suffered and will continue to suffer damages in the form of back pay, front pay, lost fringe benefits, compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

### III.  Count One—
### RACE DISCRIMINATION & HOSTILE WORK ENVIRONMENT CLAIM UNDER 42 U.S.C. § 1981

40. Gooden adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

41. UHD discriminated against Dr. Gooden because of his race and knowingly subjected him to a hostile work environment. As such, it violated 42 U.S.C. § 1981. That statute provides in part that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42. For purposes of Section 1981, "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id*. § 1981(b). *See also Hampton v. Dillard Dept. Stores*, 18 F. Supp. 2d 1256, 1263 (D. Kan. 1998).

43. In addition, Dr. Gooden suffered from a hostile work environment based upon his race. As an African American male, Mr. Gooden is a part of a protected group, he was subjected to unwelcome harassment based upon his race and such harassment affected a term, condition, or privilege of his employment, and Defendants knew or should have known of the harassment and failed to take prompt remedial action.

44. Dean Gengler constantly made discriminatory racist remarks, jokes, innuendos, and slants to or about Dr. Gooden that were sufficiently severe and pervasive and altered the conditions of the plaintiff's employment and create an abusive working environment.

45. Considering the totality of the circumstances, including the frequency of Dr. Gengler's discriminatory conduct, its severity and humiliating intent, they were all factors in Dr. Gooden's work environment which was objectively offensive.

46. Dr. Gooden has suffered actual economic losses, as well as emotional harm as a result of his unlawful discrimination. He seeks damages for actual economic losses and for emotional harm damages in the form of compensatory damages. *See, e.g., Salinas v. O'Neill*, 286 F.3d 827, 833 (5th Cir. 2002) (affirming a $150,000.00 compensatory damages award for mental anguish under Section 1981 where the plaintiff did not receive a position because of his race).

47. UofH acted with malice and reckless indifference to Dr. Gooden's federally protected rights. As such, Dr. Gooden's seeks punitive damages. *Abner v. Kansas City Southern Railroad Co.*, 513 F.3d 154, 164 (5th Cir. 2008) (affirming $125,000.00 punitive damages awards to each plaintiff under Section 1981, even though each plaintiff was awarded only $1.00 in actual damages, and strongly suggesting that any punitive damages award up to $300,000.00 per plaintiff would have been appropriate even in the absence of any actual damages); *Hampton*, 18 F. Supp. 2d at 1276-77 (awarding the plaintiff $1,100,000 in punitive damages in a Section 1981 race discrimination case). Dr. Gooden's also seeks attorneys' fees, costs, and pre and post-judgment interest.

## IV. Count Two—
### DISCRIMINATION BASED ON RACE IN VIOLATION OF
### 42 U.S.C. § 2000E-2(A)

48. Dr. Gooden adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

49. During Dr. Gooden's employment with UofH, it was covered by Title VII.

50. Under Title VII, an employer commits an unlawful employment practice if it fails or refuses to hire or discharges "any individual, or otherwise … discriminate[s] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[]"or if it limits, segregates or classifies its employees or applicants for employment "in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

51. By treating Dr. Gooden less preferentially that its white employees, UofH discriminated against Dr. Gooden because of his race.

52. UofH acted with malice or reckless indifference with respect to the Title VII violation(s) described above.

53. As a result of the Title VII violation(s) described above, UofH is liable to Dr. Gooden for compensatory damages (emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, both in the past and in the future)

and punitive damages, back pay (including interest on back pay), front pay and attorney's fees (including expert fees) under Title VII. *See*, 42 U.S.C. §§ 1981a(a)(1), 1981a(b), 2000e-5.

## V. Count Three—
### SEX DISCRIMINATION IN VIOLATION OF
### 42 U.S.C. § 2000E-2(A)

53. Dr. Gooden adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

54. Under Title VII, an employer commits an unlawful employment practice if it fails or refuses to hire or discharges "any individual, or otherwise … discriminate[s] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[]"or if it limits, segregates or classifies its employees or applicants for employment "in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

55. The Supreme Court held Title VII's "because of … sex" terminology prohibits "sexual orientation" and "gender identity" discrimination in employment. See generally, *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020).

56. By treating Dr. Gooden less preferentially that its heterosexual employees, UofH discriminated against Dr. Gooden because of his sex, including sexual orientation.

57. UofH acted with malice or reckless indifference with respect to the Title VII violation(s) described above.

58. As a result of the Title VII violation(s) described above, UofH is liable to Dr. Gooden for compensatory damages (emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, both in the past and in the future) and punitive damages, back pay (including interest on back pay), front pay and attorney's fees (including expert fees) under Title VII. *See*, 42 U.S.C. §§ 1981a(a)(1), 1981a(b), 2000e-5.

## VI. Count Four—
### HARASSMENT BASED ON RACE & SEX IN VIOLATION OF
### 42 U.S.C. § 2000E-2(A)

59. Dr. Gooden adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

60. During Dr. Gooden's employment with UofH, it was covered by Title VII.

61. Under Title VII, an employer commits an unlawful employment practice if it fails or refuses to hire or discharges "any individual, or otherwise … discriminate[s] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[]"or if it limits, segregates or classifies its employees or applicants for employment "in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

62. During Dr. Gooden's employment with UofH, he was subjected to unwelcome harassment based on his race and his sex, including sexual orientation.

63. The harassment was sufficiently severe or pervasive to affect a term, condition or privilege of Dr. Gooden's employment with UofH and/or to create a hostile or abusive work environment.

64. UofH knew or should have known of the harassment and failed to take prompt remedial action.

65. UofH acted with malice or reckless indifference with respect to the Title VII violation(s) described above.

66. As a result of the Title VII violation(s) described above, UofH is liable to Dr. Gooden for compensatory damages (emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, both in the past and in the future) and punitive damages, back pay (including interest on back pay), front pay and attorney's fees (including expert fees) under Title VII. *See*, 42 U.S.C. §§ 1981a(a)(1), 1981a(b), 2000e-5.

## VII. Count Five—
### RACE DISCRIMINATION IN VIOLATION OF
### TEX. LAB. CODE § 21.051

67. Dr. Gooden adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

68. During Dr. Gooden's employment with UofH, it was covered by TCHRA.

69. Under the TCHRA, an employer "commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges

of employment; or (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee." Tex. Lab. Code § 21.051.

70. By treating Dr. Gooden less preferentially that its white employees, UofH discriminated against him because of his race.

71. UofH acted with malice or reckless indifference with respect to the TCHRA violation(s) described above.

72. As a result of the TCHRA violation(s) described above, UofH is liable to Dr. Gooden for compensatory damages (future pecuniary losses and emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, both in the past and in the future) and punitive damages, back pay (including interest on back pay), front pay and attorney's fees (including expert fees) under the TCHRA. *See*, Tex. Lab. Code §§ 21.258-21.259.

## VIII. Count Six—
### HARASSMENT BASED ON RACE DISCRIMINATION IN VIOLATION OF TEX. LAB. CODE § 21.051

73. Dr. Gooden adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

74. During Dr. Gooden's employment with UofH, it was covered by TCHRA.

75. Under the TCHRA, an employer "commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer (1) fails

or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee." Tex. Lab. Code § 21.051.

76. During Dr. Gooden's employment with UofH, he was subjected to unwelcome harassment based on his race.

77. The harassment was sufficiently severe or pervasive to affect a term, condition or privilege of Dr. Gooden's employment with UofH and/or to create a hostile or abusive work environment.

78. UofH acted with malice or reckless indifference with respect to the TCHRA violation(s) described above.

79. As a result of the TCHRA violation(s) described above, UofH is liable to Dr. Gooden for compensatory damages (future pecuniary losses and emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, both in the past and in the future) and punitive damages, back pay (including interest on back pay), front pay and attorney's fees (including expert fees) under the TCHRA. *See*, Tex. Lab. Code §§ 21.258-21.259.

## IX.   Count Seven-
### ATTORNEY'S FEES UNDER 42 U.S.C. § 2000E-5(K)
### & TEX. LAB. CODE § 21.259

80. Gooden adopts by reference all of the facts set forth above. *See*, Fed. R. Civ. P. 10(c).

81. Gooden is authorized to recover attorney's fees (including expert fees) on his claims by statute. *See*, 42 U.S.C. § 2000e-5(k); *see also*, Tex. Lab. Code § 21.259.

82. Gooden has retained the professional services of the undersigned attorneys.

83. Gooden has complied with the conditions precedent to recovering attorney's fees.

84. Gooden has incurred or may incur attorney's fees in bringing this lawsuit.

85. The attorney's fees incurred or that may be incurred by Gooden were or are reasonable and necessary.

86. Defendants are liable to Dr. Gooden for attorney's fees (including expert fees) by reason of the Title VII and TCHRA violations described above. *See*, 42 U.S.C. § 2000e-5(k); *see also*, Tex. Lab. Code § 21.259.

## X.   JURY DEMAND

87. Dr. Gooden demands a jury trial.

## XI.   CONDITIONS PRECEDENT

88. All conditions precedent have been performed or have occurred. *See*, Fed. R. Civ. P. 9(c).

## XII. Prayer

89. Dr. Gooden asks that the Court issue citation for Defendants to appear and answer, and that Dr. Gooden be awarded a judgment against Defendants for the following:

    a. Actual damages;

    b. Back pay, plus prejudgment interest as provided by law, from the date of the adverse employment action until the date of judgment;

    c. An award of Present value of front pay due to him for a reasonable period following the date of the judgment, calculated as of the date of judgment;

    d. Compensatory damages;

    e. Punitive damages;

    f. Court costs;

    g. Attorneys' fees; and

    h. All other relief to which Plaintiff is entitled.

Respectfully Submitted,

MOORE & ASSOCIATES
Lyric Centre
440 Louisiana Street | Suite 1110
Houston, Texas 77002-1055
Telephone: (713) 222-6775
Facsimile: (713) 222-6739


By: /s/ Melissa Moore
 Melissa Moore
 Tex. Bar No. 24013189
 Federal Id. No. 25122
 melissa@mooreandassociates.net
 Auriana Siplin
 Tex. Bar. No. 24128840
 Federal Id. No. 37774433
 auriana@mooreandassociates.net

**ATTORNEYS FOR PLAINTIFF**