# EXHIBIT 16

CINDIBENCHREPORTING.COM

1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CARLOS GOODEN, PH.D.       )
                          )  Civil Action No.
VS.                       )   4:23-cv-01987
                          )
THE UNIVERSITY OF HOUSTON )
SYSTEM AND THE UNIVERSITY )
OF HOUSTON DOWNTOWN        )

*******************************************************

VIDEOCONFERENCING DEPOSITION OF

NOEL BALDOVINO

JANUARY 31, 2024

VOLUME 1 OF 1

(REPORTED REMOTELY)

*******************************************************

     VIDEOCONFERENCING DEPOSITION OF NOEL BALDOVINO,
produced as a witness at the instance of the
Plaintiff and duly sworn remotely, was taken in the
above-styled and numbered cause on January 31, 2024,
from 4:29 p.m. to 4:57 p.m. before Karen Romeo
Rothman, Certified Shorthand Reporter in and for the
State of Texas, reported by computerized stenotype
machine wherein all parties were present via Zoom
VideoConferencing Webcast, pursuant to the Federal
Rules of Civil Procedure and the provisions state on
the record or attached hereto.

CINDIBENCHREPORTING.COM

2

1                      APPEARANCES

2

3    FOR THE PLAINTIFF:

4    Ms. Rochelle Owens
     Texas Bar No. 24048704
5    Moore & Associates
     440 Louisiana Street, Suite 1110
6    Houston, TX  77002-1055
     Telephone:  713.222.6775
7    Email: rochelle@mooreandassociates.net

8

9    FOR THE DEFENDANTS:

10   Mr. Jason Contreras
     Texas Bar No. 24032093
11   Texas Attorney General's Office
     P.O. Box 12548, Capitol Station
12   Austin, TX  78711
     Telephone:  512.463.2120
13   Email: jason.contreras@OAG.Texas.gov

14

15

16

17

18

19

20

21

22

23

24

25

CINDIBENCHREPORTING.COM

3

1                              INDEX

2     NOEL BALDOVINO                    JANUARY 31, 2024

3                                              PAGE

4     Examination by Ms. Owens ..................  5

5     Signature Page ...........................  23

6     Court Reporter's Certificate ...............  24

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

```
1

2                        EXHIBITS

3    EXHIBIT      DESCRIPTION                    MARKED

4       1         Notice of Deposition              6

5       2         Noel Baldovino Formal Complaint   13

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

5

1                    NOEL BALDOVINO,

2    having been first duly sworn, testified as follows:

3                      EXAMINATION

4         Q    (By Ms. Owens) Good afternoon,

5    Mrs. Baldovino.  I apologize for the major delay,

6    but how are you today?

7         A    I'm good, thank you.

8         Q    Good, good.  Can you state your full name

9    for the record, please?

10        A    Sure.  It's Noel Baldovino.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

6

1    Q    Okay.  Well, I'm not going to further that

2  line of questioning.

3    A    Okay.  Thank you.

4    Q    Sure.  So, you've been deposed one time.

5  And today I'm going to depose you, and you're here

6  as a result of receiving information that there's

7  been a notice of deposition regarding your

8  deposition today.  Is that correct?

9    A    Correct.

10           (Exhibit No. 1 was marked)

11    Q    Okay.  And are you able to see the

12  document in front of you?

13    A    I am.

14    Q    Okay.  And it states Plaintiff's Notice of

15  Deposition of Noel Baldovino, and it provides the

16  date of the deposition and the location of the

17  deposition.  Do you see that?

18    A    I do.

19    Q    Okay.  All right.  Have you taken any

20  medications in the last 24 hours, including

21  over-the-counter or prescription, that would prevent

22  you from being able to recall facts in this matter?

23    A    No.

24    Q    Okay.  And do you understand that I

25  represent Dr. Carlos Gooden, who filed a lawsuit

7

1    against Defendants University of Houston Downtown

2    and the University of Houston System?

3         A    Yes.

4         Q    And you understand that you're testifying

5    under oath, similar to how you would testify in a

6    court if this matter went to trial?

7         A    Yes.

8         Q    And if you provide false testimony, you

9    could be held under penalty of perjury.  Do you

10   understand that?

11        A    Yes.

12        Q    And I'm sure Mr. Contreras has provided

13   some ground rules on how to take depositions, but

14   answers such as uh-huh and huh-uh, unfortunately,

15   they don't transcribe very well, so I need

16   affirmative answers from you.  Can I get an

17   agreement with you on the record?

18        A    Yes.

19        Q    And I may ask a bad question from time to

20   time, and if and when I do, please tell me, so that

21   I can reask the question.  Okay?

22        A    Okay.

23        Q    Now, I understand that you know, or you

24   have an idea of where I may be going with a

25   question, but in order to ensure that the record is

8

1   clear and clean, I need you to wait until I finish

2   asking my question.  Then, of course, you can answer

3   the question.  Okay?

4        A    Okay.

5        Q    If you need to take a break at any time,

6   of course, you can.  I just ask that if there is a

7   question that is pending on the table, that you

8   answer the question.  Then, of course, afterwards

9   you can take your break.  You understand?

10       A    Yes.

11       Q    If you answer a question, I will assume

12  you understood the question.  And so that is why my

13  goal for you today is so that you understand my

14  questions.  Okay?

15       A    Okay.

16       Q    All right.  With that said, we can get

17  started.  Where do you currently reside?

18       A    At 515 Bishop Street in Houston.

19       Q    Okay.  Have you ever been convicted of a

20  crime?

21       A    No.

22       Q    Have you ever been arrested for one?

23       A    No.

24       Q    Are you a native Texan?

25       A    I am.

CINDIBENCHREPORTING.COM

9

1     Q     Are you married?

2     A     No.

3     Q     Do you have any children?

4     A     Yes.

5     Q     How many children do you have?

6     A     I have one.

7     Q     Okay.  Who is your current employer?

8     A     The University of Houston Downtown.

9     Q     Okay.  What is your position with the

10   University of Houston Downtown?

11   A     I'm a marketing manager.

12   Q     Okay.  When did you first begin working

13   for the University of Houston Downtown?

14   A     July 19, 2021.

15   Q     All right.  And is the marketing manager

16   role, is that the only position that you've had

17   within UHD?

18   A     Yes.

19   Q     All right.  Do you have a college degree?

20   A     I do.

21   Q     What do you have a college degree in?

22   A     I have a Bachelor of Administration in

23   Marketing.

24   Q     Prior to working for UHD, what was your

25   previous employment?

10

1      A     I was a district director for a State

2   representative.

3      Q     And how long were you the district

4   director for the State representative?

5      A     I believe nine months, total.

6      Q     Okay.  What was the name of the State

7   representative?

8      A     State Representative Penny Morales Shaw.

9      Q     Okay.  And prior to working for Ms. Penny

10  Morales Shaw, where were you employed at?

11     A     I worked on her campaign before I worked

12  for her with the State of Texas.

13     Q     Okay.  And prior to working on her

14  campaign with the State of Texas, where were you

15  employed?

16     A     Oh, gosh.  I worked for -- I did contract

17  work for a friend of mine.  I was doing recruiting,

18  contract recruiting.  I can't recall the name of the

19  company now.

20     Q     Okay.  Do you know how long you worked,

21  that you performed contract work in recruiting?

22     A     It was probably six or seven months.

23     Q     Okay.

24     A     Uh-huh, that I can remember.

25     Q     All right.  Prior to contract work in

11

1    recruiting, did you work for a particular entity or

2    a company?

3         A    Yes.  I worked for Cornerstone Home

4    Lending.

5         Q    Okay.  What years did you work for

6    Cornerstone Home Lending?

7         A    I worked for them at two different times.

8    So, one of the times was I think between like 2009

9    or 2008 and 2011, and then again from 2015 until I

10   want to say '17 or '18, 2017 or '18, around that

11   time.

12        Q    Okay.  During the time that you worked

13   between the years of 2008 and the present, did you

14   ever participate in any investigation for

15   discrimination for maybe harassment, hostile work

16   environment, sexual harassment, anything of the

17   sort?

18        A    Not that I can recall, no.

19        Q    Okay.  All right.  Ms. Noel Baldovino,

20   does this document look familiar to you?

21        A    Can you --

22             MR. CONTRERAS:  You can ask her to scroll

23        up or down.

24             THE WITNESS:  Yeah.

25        Q    (By Ms. Owens) Do you need me to enlarge

```
                                                      12
 1    it?
 2         A    No.  I just -- can you scroll down a
 3    little bit more?
 4         Q    Sure.  (Complying.)
 5         A    Yes.  I'm familiar with this document,
 6    uh-huh.
 7         Q    Okay.  All right.
 8         A    Yes.
 9         Q    So, did you file a formal complaint with
10    the Office of Title IX Equal Opportunity Services
11    office on June 6, 2022?
12         A    Yes.
13         Q    Okay.  And this is a copy of the formal
14    complaint that you filed?
15         A    It looks to be like one, yes.
16         Q    Okay.  What prompted you to file your
17    formal complaint?
18         A    I was counseled by Lauri Ruiz in the Title
19    IX office.
20         Q    Okay.
21         A    Uh-huh.
22         Q    All right.  And who was your formal
23    complaint filed against?
24         A    The Dean of the College of Business,
25    Marilyn Davies College of Business, Dr. Gengler.
```

13

1    Q    Okay.  Dean Charles Gengler?

2    A    Correct.

3    Q    Okay.  And I will let you review the facts

4  section, the "explain the nature of your complaint"

5  section.  I'll let you review that, okay?

6    A    Okay.  (Reading.)  Can you please scroll,

7  so that I can see the rest of it?

8    Q    Sure.  (Complying.)

9    A    Okay.  (Reading.)   Okay.

10    Q    All right.  On May 19th, is this what --

11  May 19th, 2022, is this what occurred to you with

12  respect to Dean Gengler?

13    A    Yes, that's -- I honestly don't remember

14  the exact date, because it's been a while, but this

15  is what I remember occurring that evening.

16    Q    Okay.  All right.  So, I'm going to move

17  up.

18    A    Okay.

19          (Exhibit No. 2 was marked)

20    Q    This is Exhibit 2, and it states,

21  "Incident Information," date of incident, May 19,

22  2022, location of incident, Discovery Green.  Do you

23  have any reason to dispute the date of the incident

24  or the location of the incident?

25    A    No.

14

1    Q    Okay.  Let's talk about Dean Charles
2    Gengler.  Did Dean Gengler make you feel
3    uncomfortable on May 19th, 2022?
4    A    Yes.
5    Q    Did your co-workers communicate to you
6    that they felt uncomfortable with Dean Gengler
7    regarding the incident that occurred on May 19th,
8    2022?
9    A    When you say co-workers, who are you
10   referring to?
11   Q    Sure.  So, there's an area here that
12   states, "I told my manager, Toye Simmons what
13   occurred.  The two other ladies who were with me
14   also heard."  So, that's why I asked.
15   A    Understood.  I -- I'm not sure.
16   Q    Okay.  All right.  In the incident section
17   where you're specifically discussing what occurred,
18   it refers to a Critical Race Theory joke where Dr.
19   -- or Dean Gengler was about to tell the joke, and
20   you decided to walk away.
21   A    Correct.
22   Q    Okay.  He says, "I have jokes that I make
23   up.  I tell them to folks to see if they are funny.
24   Would y'all like to hear some of my jokes?"  You
25   said, "I said nothing.  I'm not sure what the other

15

1  ladies said.  He then proceeded to say, 'I have some

2  jokes on Critical Race Theory that I'd like to tell

3  you all.'  At that, I turned and left."  You see

4  that section?

5      A    I do.

6      Q    Okay.  Do your co-workers communicate to

7  you that Dean Gengler told them the Critical Race

8  Theory joke as you walked away from him?

9      A    No.

10      Q    Okay.

11      A    They did not.

12      Q    Did you meet with anyone at the Office of

13  Title IX Equal Opportunity Services prior to filing

14  your formal complaint?

15      A    I can't recall.  I -- I can't recall what

16  the timeline was of those events.

17      Q    Okay.  Do you recall having any

18  conversations with Mrs. Lauri Ruiz?

19      A    Yes.

20      Q    Okay.

21      A    Uh-huh.

22      Q    Did you have any conversations with her

23  prior to filing the formal complaint?

24      A    As I mentioned, I don't -- I don't recall.

25      Q    Okay.  How did you forward the formal

16

1    complaint to the Title IX Equal Opportunity Services

2    office?

3         A    When you say how did I turn -- how did I

4    turn it in?

5         Q    Yes, ma'am.

6         A    I e-mailed it to them.

7         Q    Okay.  And after you e-mailed it to them,

8    did you have any meetings with anyone regarding your

9    formal complaint?

10        A    I believe so.

11        Q    Okay.  Who did you meet with?

12        A    I believe I met with Lauri again.  She was

13   checking in with me to see how I was doing.

14        Q    Okay.  Other than her checking in to see

15   how you were doing, what was the other -- were there

16   any other purposes of this conversation with Ms.

17   Ruiz?

18        A    Not that I can recall.

19        Q    Okay.  After you filed your formal

20   complaint, did anyone follow up with you besides

21   Mrs. Lauri Ruiz regarding the complaint?

22        A    Yes.

23        Q    Okay.  Who was that?

24        A    My direct manager, Toye Simmons.

25        Q    Okay.  And what did you discuss with

17

1    Mrs. Toye Simmons?

2        A    Again, Toye was asking me sort of the same

3    thing that Lauri was.  They wanted to know how I was

4    doing, and I was reassured by Toye that I wouldn't

5    have to work with Dr. Engler (sic) -- excuse me, I

6    wouldn't have to work with Dr. Gengler going

7    forward, moving forward.

8        Q    Okay.  Were you placed on a no-contact

9    status with Dean Gengler?  Did you receive some

10   document that states, you know, you're not supposed

11   to go near Dean Gengler, and Dean Gengler's not

12   supposed to go near you?

13       A    Not that I can recall.

14       Q    Okay.  After you filed your formal

15   complaint, did you ever receive a copy of Dean

16   Gengler's response to your complaint?

17       A    I did.

18       Q    Okay.  And what is your understanding of

19   Dean Gengler's response to your complaint?

20           MR. CONTRERAS:  Objection, calls for

21       speculation, lacks foundation.

22       Q    (By Ms. Owens) Okay.  You can answer the

23   question.

24           MR. CONTRERAS:  If you know.

25       A    Honestly, I can't remember.  I -- what I

18

1    remember is getting a lot of pages that were -- most

2    of it had been redacted.  It was like -- like

3    Sharpie all over the entire page.  That's what I

4    remember.

5         Q    Okay.  All right.  Was that a preliminary

6    report of some sort, or was that Dean Gengler's

7    actual response to your formal complaint?

8         A    I don't recall.

9         Q    Okay.  All right.  Do you know the

10   disposition of your formal complaint?  In other

11   words, how did it resolve?

12        A    Yes.

13        Q    Okay.  What was the disposition of your

14   formal complaint?

15        A    When you say disposition, are you -- are

16   you asking how it -- like what the outcome was?

17        Q    Yes, ma'am.

18        A    The outcome for both, like, the incidents

19   were separated out between the one with the double D

20   and triple D comment and then the Critical Race

21   Theory comment.  So, they were both said to be

22   substantiated.

23        Q    Okay.  Have you heard of any other

24   complaints from other employees regarding Dean

25   Gengler?

19

1      A    I -- I can't recall at this time ever

2  having heard about any other complaints.

3      Q    Okay.  All right.  Did you receive a

4  document that the first page looks sort of like

5  this, or something like this?

6      A    I may have.

7      Q    Okay.  What were the names of your

8  co-workers that heard Dean Gengler along with you?

9      A    Honestly, I can't recall their names.

10     Q    Okay.  Do you know if you still work with

11  these individuals?

12     A    I do not work directly with them.

13     Q    Okay.  Were you ever put on notice that

14  Dean Gengler was placed on administrative leave?

15     A    I believe so.

16     Q    Okay.  How did you learn that information?

17     A    That I can recall, that information came

18  from my direct manager, Toye Simmons.

19     Q    Did you ever learn that Dean Gengler

20  resigned from the UHD?

21     A    Yes.

22     Q    Okay.  When did you learn that?

23     A    I can't recall.  It was probably around

24  the time that I was working on a project for

25  commencement.

CINDIBENCHREPORTING.COM

20

1    Q    Okay.  And how did you learn?  How did you

2    learn that Dean Gengler had resigned?

3    A    I, as part of that project, have to list

4    information from the colleges, and when I was

5    compiling that information is when I learned that he

6    was no longer with the university.

7    Q    Okay.  And when were you working on this

8    project?

9    A    I work -- specifically, that project would

10   have been fall, that fall.  So, June, July, August,

11   September -- probably October-November time frame.

12   Q    Of 2020 what?  The same -- '22.  So, after

13   the incident, the following fall?

14   A    Correct.

15   Q    Did anyone ever report to you that -- or

16   did anyone ever tell you, like a co-worker tell you

17   that Dean Gengler had made some inappropriate sexual

18   related comments to him?  Did a male co-worker tell

19   you that?

20   A    Yes.

21   Q    Okay.  This male co-worker, did he tell

22   you that Dean Gengler had offered him numbers for

23   Asian women or prostitutes?

24   A    Yes.

25   Q    What is the name of your co-worker that

21

1   told you that?

2       A    Michael Manuel.

3       Q    Where were you when Michael Manuel told

4   you this?

5       A    Discovery Green.

6       Q    Okay.  Other than Michael Manuel telling

7   you this, did anyone else at Discovery Green tell

8   you what Dean Gengler had stated to them?

9       A    No.

10       Q    Ms. Baldovino, have you understood my

11   questions today?

12       A    Yes.

13       Q    All right.  Thank you for your time.

14           MS. OWENS:  I pass the witness.

15           MR. CONTRERAS:  Defendants will reserve

16       their questions until the time of trial.

17           THE REPORTER:  Mr. Contreras, would you

18       like a copy of this transcript?

19           MR. CONTRERAS:  Yes, please.  Same set-up

20       as with Ms. Ruiz's depo transcript.

21           THE REPORTER:  All right.  Thank you.

22           MS. OWENS:  Ms. Baldovino, thank you for

23       your time.

24           THE WITNESS:  Thank you.

25               * * * * * * * * *

22

1                              CHANGES AND SIGNATURE

2     PAGE    LINE    CHANGE                        REASON

3     _____

4     _____

5     _____

6     _____

7     _____

8     _____

9     _____

10    _____

11    _____

12    _____

13    _____

14    _____

15    _____

16    _____

17    _____

18    _____

19    _____

20    _____

21    _____

22    _____

23    _____

24    _____

25

CINDIBENCHREPORTING.COM

23

1      I declare under penalty of perjury that the

2   foregoing is true and correct.

3                                    _____

4                           NOEL BALDOVINO

5      SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned

6   authority, by the witness, NOEL BALDOVINO, on this, the

7   ____ day of _____, 2024.

8

9                           _____
                            NOTARY PUBLIC IN AND FOR
                            THE STATE OF

10

11  My Commission expires:  _____

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CINDIBENCHREPORTING.COM

24

```
                UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
                      HOUSTON DIVISION

CARLOS GOODEN, PH.D.      )
                          )  Civil Action No.
VS.                       )   4:23-cv-01987
                          )
THE UNIVERSITY OF HOUSTON )
SYSTEM AND THE UNIVERSITY )
OF HOUSTON DOWNTOWN       )


***************************************************

           REPORTER'S CERTIFICATION OF THE

           VIDEOCONFERENCING DEPOSITION OF

                    NOEL BALDOVINO

                   JANUARY 31, 2024

                 (REPORTED REMOTELY)

***************************************************

     I, Karen Romeo Rothman, Certified Shorthand

Reporter in and for the State of Texas, hereby

certify to the following:

     That the witness, NOEL BALDOVINO, was duly

sworn by the officer remotely and that the

transcript of the videoconferencing deposition is a

true record of the testimony given by the witness;

     I further certify that, pursuant to FRCP Rule

30(f)(i), that the signature of the deponent:

     _xx___ Was requested by the deponent or a party

before the completion of the deposition and that the
```

25

1   signature is to be before any notary public and returned

2   within 30 days from the date of receipt of the

3   transcript.  If returned, the attached Changes and

4   Signature Page contains any changes and the reasons

5   therefor;

6        _____ Was not requested by the deponent or a

7   party before the completion of the deposition.

8        I further certify that I am neither counsel

9   for, related to, nor employed by any of the parties

10  or attorneys in the action in which this proceeding

11  was taken, and further that I am not financially or

12  otherwise interested in the outcome of the action.

13        Certified to by me on this, the _____ day of

14  _____, 2024.

15

16                      _____

                        Karen Romeo Rothman, CSR, CRR
17                      Texas CSR 1510
                        Expiration:  02/28/25
18                      CINDI BENCH REPORTING
                        10701 Corporate Drive, Ste. 172
19                      Stafford, Texas  77477
                        281.565.8222 Fax:  281.565.8220
20                      Firm Registration No. 56

21

22

23

24

25

CINDIBENCHREPORTING.COM

26

1    COUNTY OF FORT BEND  )

2    STATE OF TEXAS        )

3         I hereby certify that the witness was notified on
     _____; that the witness had 30 days (or _____ days
4    by agreement of counsel) after being notified by the
     officer that the transcript is available for review by
5    the witness, and if there are changes in the form or
     substance to be made, then the witness shall signa
6    statement reciting such changes and the reasons given by
     the witness for making them;

7
          That the witness' signature was/was not returned as
8    of _____.

9         That a copy of this certificate was served on all
     parties and/or the witness shown here in on
10   _____;

11        That the original deposition was delivered to

12   _____;

13        I further certify that I am neither attorney or
     counsel for, related to, nor employed by any parties to
14   the action in which this testimony is taken and, further,
     that I am not a relative or employee of any counsel
15   employed by the parties hereto or financially interested
     in the action.

16

17        SUBSCRIBED AND SWORN TO under my hand and seal of

18   office on this, the _____ day of _____,

19   2024.

20                            _____
                             Karen Romeo Rothman, CSR, CRR
21                           Texas CSR 1510
                             Expiration:  2/28/25
22                           CINDI BENCH REPORTING
                             10701 Corporate Drive, #172
23                           Stafford, TX  77477
                             281.565.8222
24                           Firm Registration No. 56

25