United States District Court
Southern District of Texas
**ENTERED**
April 30, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CARLOS GOODEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-23-1987 |
| | § | |
| THE UNIVERSITY OF HOUSTON | § | |
| SYSTEM *and* THE UNIVERSITY | § | |
| OF HOUSTON-DOWNTOWN, | § | |
| | § | |
| Defendants. | § | |

## ORDER

Pending before the Court is Defendants' Motion for Summary Judgment (Document No. 44). Having considered the motions, submission, and appliable law, the Court determines the motion should be granted.

## I. BACKGROUND

This case is an employment dispute. Plaintiff Carlos Gooden ("Gooden"), an African American, homosexual male, is employed by Defendant University of Houston-Downtown ("UHD") as the executive director of the graduate business program at the Marilyn Davies College of Business (the "College"). Gooden's first-line supervisor was Professor Charles Gengler ("Gengler"), the Dean of the College of Business.

Gooden alleges that Gengler subjected him to racially discriminatory and homophobic behavior on multiple occasions. For example, On April 19, 2022, UHD

Police alerted the campus that a tall black man had committed an assault. At or around the same time, Gengler allegedly stepped out of his office immediately following the police alert and expressed to College staff that Gooden was the individual who committed the assault since he was out of the office when the incident occurred and because he "fit the description" of the suspect—i.e., a tall, black man.[1] Additionally, Gooden alleges Gengler often made homophobic remarks in the presence of Dr. Gooden and others. For example, on or around November 5, 2021, Dr. Gooden was hosting a prospective student when Gengler blurted out an inappropriate joke specifically targeting Dr. Gooden's sexual orientation, Gengler interrupted Gooden's meeting with the prospective student to joke: "What do you call two men on a date? […] a man-date."[2] On April 25, 2022, following Gengler's alleged behavior, Gooden filed a formal complaint, and UHD ultimately initiated an independent investigation into Gengler's alleged behavior.[3]

UHD contends it took prompt action after initiating the formal complaint to include a mutual no-contact order between Gooden and Gengler.[4] Further, Gengler

---

[1] *Plaintiff's Amended Complaint*, Document No. 25 at 4.

[2] *Plaintiff's Amended Complaint*, Document No. 25 at 5.

[3] UHD retained the law firm Little Mendelson, P.C. ("Littler Mendelson") to conduct the independent investigation.

[4] *Defendants' Motion for Summary Judgment*, Document No. 44 at 2.

was placed on administrative leave pending the results of the independent investigation. On November 11, 2022, after receiving a draft of the final report, Gengler filed a complaint with the Equal Employment Opportunity Commission ("EEOC") complaining of age and race discrimination. Before the issuance of the final investigation report, **Gengler voluntarily resigned** from UHD, resolving the matter. Gooden contends the investigation took over a year and that UHD violated its policies by failing to address Gooden's complaints in a timely and adequate manner. Further, Gooden contends a deal was reached between the Defendants and Gengler that ultimately ended the investigation and covered up Gooden's complaints. In June 2022, Gooden filed a charge of discrimination and a hostile work environment with the EEOC.

Based on the foregoing, on May 30, 2023, Gooden filed this lawsuit against UHD and the Defendant University of Houston System ("UH") (collectively, the "Defendants") for: (1) violations of 42 U.S.C. § 1981 for race discrimination and hostile work environment[5]; (2) violations of Title VII of the Civil Rights Act ("Title VII") for discrimination based on race and sexual orientation (i.e., homosexual); (3) Title VII for hostile work environment; and (4) Title IX of the Education

---

[5] Gooden voluntarily dismissed his claims arising out of 42 U.S.C. § 1981. *See Order of Partial Dismissal*, Document No. 32 at 1–2.

3

Amendments Act of 1972 for hostile work environment based on sexual orientation.

## II. STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence in a light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the nonmovant will be unable to establish a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

But the nonmoving party's bare allegations, standing alone, are insufficient to create a material dispute of fact and defeat a motion for summary. If a reasonable jury could not return a verdict for the nonmoving party, then summary judgment is appropriate. *Liberty Lobby, Inc.*, 477 U.S. at 248. The nonmovant's burden cannot be satisfied by "conclusory allegations, unsubstantiated assertions, or 'only a

scintilla of evidence.' " *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Uncorroborated self-serving testimony cannot prevent summary judgment, especially if the overwhelming documentary evidence supports the opposite scenario. *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 294 (5th Cir. 2004). Furthermore, it is not the function of the Court to search the record on the nonmovant's behalf for evidence which may raise a fact issue. *Topalian v. Ehrman*, 954 F.2d 1125, 1137 n.30 (5th Cir. 1992). Therefore, "[a]lthough we consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant, the nonmoving party may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000).

### III. LAW & ANALYSIS

The Defendants contend: (1) Gooden's Title VII claims fail because Defendants took no adverse employment action against him and because he cannot show he was treated less favorably than others similarly situated under nearly identical circumstances; (2) Gooden's hostile work environment claims fail because it did not affect his employment and the Defendants took prompt remedial actions;

and (3) Gooden has abandoned his Title IX claims.[6] Gooden contends that "the better course is to proceed to trial" and that he has adequately pleaded a cause of action for discrimination based on race and sexual orientation and a claim for the hostile work environment.[7]

*A. Title VII Discrimination Claims*

The defendants contend that Gooden fails to show any adverse employment action that would sustain a *prima facie* case of discrimination under Title Seven for race-based or sex-based discrimination. Further, the Defendants contend Gooden has not identified any appropriate comparators to sustain his claim. Gooden contends he was subjected to adverse employment action and has adequately shown a *prima facie* discrimination case.

To establish a *prima facie* case of racial discrimination under Title VII, a plaintiff must show he: "(1) is a member of a protected class; (2) was qualified for [his] position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably." *Okoye v. Univ. of Tex.*

---

[6] *Defendants' Motion for Summary Judgment*, Document No. 44 at 3.

[7] *Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment*, Document No. 47 at 19–21.

*Hous. Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001) (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)) (internal quotations omitted).

The Defendants contend it is clear that Gooden was never subjected to any adverse employment action.[8] Gooden admits that he maintained his employment during the investigation and was never subjected to a salary decrease or reprimanded/disciplined in any way.[9] Additionally, Gooden received a pay raise during his employment and remained employed (with no role change) during and after his complaint was adjudicated.[10] Gooden contends the Fifth Circuit, in *Hamilton v. Dallas*, has drastically lowered the standard for adverse employment action and that the defendants took adverse action by placing Gooden under Gengler in the first place.

While *Hamilton* broadened what is seen as an adverse employment action, it did not eliminate the requirement of an adverse employment action. The Fifth Circuit

---

[8] *Defendants' Motion for Summary Judgment*, Document No. 44 at 6–7.

[9] *Defendants' Motion for Summary Judgment*, Document No. 44, Exhibit 2 at 4–8 (*Plaintiff's Responses to the Defendants Request for Admissions*) and *Defendants' Motion for Summary Judgment*, Document No. 44, Exhibit 5 at 206:6–12 (*Deposition of Carlos Gooden*) [hereinafter *Deposition of Gooden*].

[10] *Defendants' Motion for Summary Judgment*, Document No. 44, Exhibit 2 at 4–8 (*Plaintiff's Responses to the Defendants Request for Admissions*).

held, "To adequately plead an adverse employment action, plaintiffs need not allege discrimination with respect to an ultimate employment decision. Instead, a plaintiff need only show that she was discriminated against, because of a protected characteristic, with respect to hiring, firing, compensation, or the terms, conditions, or privileges of employment— just as the statute says." *Hamilton v. Dallas County*, 79 F.4th 494, 506 (5th Cir. 2023) (en banc). In the instant case, there is no indication that the alleged discrimination by Gengler affected Gooden's employment in terms of hiring, firing, compensation, or the terms, conditions, or privileges of his employment. However, Gooden contends that adverse action has been taken against him because: (1) the Defendants placed Gooden under Gengler's supervision in the first place; (2) the month the initial investigation took was unreasonable; (3) the fact that certain coworkers do not believe his complaints makes his working at UHD complicated; and (4) the fact UHD took away temporary additional responsibility and a related monetary stipend.

Before Gooden was assigned to Gengler's supervision, Gengler had only received two prior complaints.[11] The complaints had not been substantially proven,

---

[11] One complaint occurred in 2019, and no violations were found. *Defendants' Motion for Summary Judgment*, Document No. 44, Exhibit 6 at 1–3 (*Report of Finding RE Rodney Complaint*) The Second occurrences occurred in 2020, and the two complainants chose not to proceed with the process. *Defendants' Motion for Summary*

and nothing in the record suggests that the Defendants acted recklessly or inappropriately by placing Gooden in Gengler's chain of command. Additionally, Gooden's contention that the Defendant's failure to immediately separate Gooden and Gengler is an adverse action similarly fails. On April 25, 2022, Gooden filed his formal complaint against Gengler.[12] On April 26, 2022, an equal opportunity officer met with Gooden to explain the process. On April 27, 2022, the officer met with Gooden again, and shortly after that, the independent law firm Littler Mendelson was hired to conduct the investigation. Based on the recommendation of Littler Mendelson, Gengler was placed on leave, and a no-contact order was put in place.[13] In less than a month, the Defendants took action to remedy the situation after promptly starting an investigation within days of Gooden's initial complaint. *Kreamer v. Henry's Towing*, 150 Fed. App'x 378, 382 (5th Cir. 2005) (To be prompt remedial action, the employer's action must be reasonably calculated to end the harassment but need not end the harassment instantly). Additionally, Gooden does not allege or provide any evidence that any harm or further discriminatory action

---

*Judgment*, Document No. 44, Exhibit 11 at 1–2 (*Equal Opportunity Services Memorandum to File Re Thorne and Chase Complaint*).

[12] *Defendants' Motion for Summary Judgment*, Document No. 44, Exhibit 19 at 1–15 (*Plaintiff's Written Complaint to UHD's EO Office*)

[13] *Defendants' Motion for Summary Judgment*, Document No. 44, Exhibit 27 at 1–2 (*Littler Mendelson's Memorandum Re Interim Action*)

took place during this period prior to the injunctive remedies put in place by the Defendants.

Gooden further contends that co-workers expressed support for Gengler and skepticism of his allegations made "his job complicated" and that an additional role related to digital communication was taken from him.[14] Fact witnesses were interviewed during the investigation, and some shared support for Gengler and skepticism of Gooden's complaint; no facts suggest those statements were made public.[15] While witnesses stated their opinions (which is their right), nothing in the file suggests the Defendant let those opinions influence their actions, which ultimately sided with Gooden. Further, beyond the vague statement about complicating his work, it is unclear how the opinions of others adversely affected him in the context of Title VII. Generally, a subjective belief cannot create an adverse employment action. *McFall v. Gonzales*, 143 Fed. Appx. 604, 608 (5th Cir. 2005).

---

[14] Gooden also contends Marilyn Davies, the College's namesake, also stated she did not believe Gooden's allegations.

[15] *Defendants' Reply to Plaintiff's Response to Motion for Summary* Judgment, Document No. 54 at 6 and Defendants' *Motion for Summary Judgment*, Document No. 44, Exhibit 34 at 760-785 (*Investigation Exhibts 1-33*)

Gooden's contention that Defendants redelegating his digital communication job duties and taking away the corresponding salary stipend is proof of an adverse action also fail. The record indicates that the digital communication role was not a part of Gooden's regular duties. Gooden admitted that the prior person in this role resigned in February 2021, that he started performing some of these duties in October 2021, and stopped performing the duties in June 2022 because a new digital communications manager was hired on June 1, 2022.[16] The Court is unpersuaded by Gooden's argument that the delegation of a duty temporarily assigned to him to a newly hired employee amounts to an adverse employment action.[17] Accordingly, the Court finds Gooden is unable to show any adverse action taken against him or his terms and conditions of employment. Thus, Gooden's claims of race and sex discrimination fail as a matter of law.[18] The Court now addresses Gooden's claims of a hostile work environment.

---

[16] *Deposition of Carlos Gooden*, supra note 9, at 196:13–197:2; 198:8-24.

[17] Even if one construes the taking of the digital communication duties as adverse, it is clear from the record that the duties were outside the scope of Gooden's position and as such UHD had a legitimate nondiscriminatory reason for assigning the responsibilities back to a full-time employee. Further, Gooden acknowledges that the job was outside his scope of employment and that he did not protest sending the duties to the newly hired personnel. Accordingly, Gooden cannot show the action taken by UHD was a pretext for discrimination. *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir.) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

[18] The Court notes that the Defendants also contend Gooden has failed to adequately identify adequate comparators. Gooden contends that three heterosexual,

## B. *Hostile Work Environment Claim*

To establish a prima facie case of a hostile work environment, Plaintiff must present evidence that (1) he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) the alleged harassment was based on Plaintiff's race; (4) the harassment affected a term or condition of Plaintiffs' employment; and (5) the employer knew or should have known about the alleged harassment and failed to take prompt remedial action. *See Felton v. Polles*, 315 F.3d 470, 484 (5th Cir. 2002). Only harassment that is "severe or pervasive" will be considered to affect "a term, condition or privilege of employment." *Hudson v. Lincare, Inc.*, 58 F.4th 222, 229 (5th Cir. 2023). "For conduct to be sufficiently severe or pervasive, it must be both objectively and subjectively offensive." *Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 923 (5th Cir. 2022).

As noted above, Gooden cannot identify any concrete adverse action that affected his employment. He was never subjected to a termination or reprimand and ultimately received a pay raise. Further, Gooden is still employed in the same role following the investigation which resulted in the subsequent resignation of Gengler.

---

white, professors are adequate comparators. It is not clear they are adequate comparators because of their roles and that they never filed any complaint. However, the Court need not reach this issue based on the foregoing decision regarding adverse employment action.

Additionally, the Defendants acted promptly upon Gooden's complaint and, within a month, started an investigation, placed Gengler on leave, and put a no-contact order in place. Gooden contends that the investigation found Gengler "ha[d] engaged not in a single, isolated slight or microaggression, but rather in a series of numerous incidents of unwelcome conduct . . ."[19] Gooden further contends the Defendants should have known of the conduct based on Gengler's prior history.[20] As discussed above, the two prior complaints did not result in any actionable claim against Gengler. The file demonstrates that the Defendants acknowledged the complaints, conducted investigations in line with the Defendants' equal opportunity policy, and could not conclude that Gengler had violated any policy.[21] However, as soon as

---

[19] *Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment*, Document No. 47, Exhibit 1 at 80–83 (*Second Preliminary Report of Investigation*).

[20] Gooden seems to contend that the Defendants should have previously fired Gengler due to the previous complaints. However, when asked what this position was based on, he first said he didn't know and then gave a long-winded, vague answer that "prior complaints" were not handled adequately and that no measures were put in place, thus continuing to "perpetuate a hostile working environment." *See Deposition of Gooden*, supra, note 9 at 61:4–62:10.

[21] *Defendants' Motion for Summary Judgment*, Document No. 44, Exhibit 6 at 1–3 (*Report of Finding RE Rodney Complaint*) The Second occurrence in 2020, was concluded after the two complainants chose not to proceed with the process. *Defendants' Motion for Summary Judgment*, Document No. 44, Exhibit 11 at 1–2 (*Equal Opportunity Services Memorandum to File Re Thorne and Chase Complaint*).

*Defendants' Motion for Summary Judgment*, Document No. 44, Exhibit 6 at 1–3 (*Report of Finding RE Rodney Complaint*) and *Defendants' Motion for Summary*

Gooden raised his valid harassment complaint, actions were taken to stop the conduct. Further, Gengler's resignation put an end to any alleged harassment, and now any complaint of a "complicated work environment" or slights by co-workers that allegedly did not believe his complaint are not sufficient events to sustain a hostile work environment. Accordingly, the Court finds that while inappropriate, Gengler's alleged inappropriate behavior did not impact the terms of Gooden's employment. Further, upon a valid complaint, the Defendants took prompt and meaningful steps to stop the alleged conduct. Therefore, Gooden's claims for a hostile work environment fail. The Court now turns to Gooden's Title IX claim.

## C.   Title IX claims

The Defendants contend Gooden's Title IX claims fail as a matter of law. Gooden does not address this argument in his response. Further, Gooden explicitly states he "moves forward with his Title VII claims for race and sex discrimination and hostile work environment based upon race and sex only."[22] Accordingly, the Court finds Gooden has abandoned his Title IX claims. Therefore, the Court finds

---

*Judgment*, Document No. 44, Exhibit 11 at 1–2 (*Equal Opportunity Services Memorandum to File Re Thorne and Chase Complaint*).

[22] *Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment*, Document No. 47 at 2.

that the Defendants' motion for summary judgment regarding Gooden's Title IX claims should be granted.

## IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Defendant Objections to Plaintiff's Response to Defendant's Motion for Summary Judgment (Document No. 53)[23] are **OVERRULED**. The Court further

**ORDERS** that Defendants' Motion for Summary Judgment (Document No. 44) is **GRANTED**.

**THIS IS A FINAL JUDGMENT.**

SIGNED at Houston, Texas, on this __30__ day of April, 2024.

DAVID HITTNER
United States District Judge

---

[23] The Defendants' objected to various exhibits in Gooden's response. The Court considered all filings and gave appropriate weight to all exhibits in the file.